J-A25001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.D.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: P.A., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 778 WDA 2023 |

Appeal from the Order Entered June 8, 2023
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000147-2022

| | | |
|---|---|---|
| IN THE INTEREST OF:  D.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: P.A., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 779 WDA 2023 |

Appeal from the Order Entered June 8, 2023
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000146-2022

BEFORE:   BOWES, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED: December 29, 2023**

P.A. ("Father") appeals from the orders entered on June 8, 2023, which terminated involuntarily his parental rights to his twin children L.D.A. and D.A., born in March 2013.[1]  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The children's mother, L.A. ("Mother"), passed away in 2022.

The orphans' court provided a succinct history of these matters:

> The Allegheny County Office of Children, Youth and Families ("CYF") became involved with Father, Mother, and the children in April of 2020 due to ongoing substance abuse concerns affecting both parents' ability to appropriately care for their special needs children. [The] children are both on the autism spectrum and require various specialized services as well as constant supervision. In July 2020, parents were both charged with endangering the welfare of children ("EWOC") following an incident where [then-seven-year-old] L.D.A. pushed out a window in the home and was later found wandering alone in the street [wearing only a diaper]. By August of 2020, CYF's concerns regarding parents' sobriety had increased[ a]fter a drug screen on August 12, 2020, Father tested positive for cocaine and opiates, as well as his prescribed methadone. At that time, Father was participating in methadone treatment at Tadiso. Following the positive test, Father participated in a drug and alcohol evaluation and entered intensive outpatient treatment through Pyramid [Healthcare].
>
> On September 17, 2020, CYF received a report from police that parents and [the] children were found sleeping in their car and Father appeared to be intoxicated. At the time of the incident, both parents had active warrants for failing to appear for their hearings regarding the EWOC charges. The police accordingly took them into custody. CYF obtained an emergency custody authorization ("ECA") and placed [the] children with Maternal Grandmother. Following a shelter hearing, the court permitted Mother to remain in Maternal Grandmother's home to facilitate the routine and stability needed by the children.

Orphans' Court Opinion, 8/2/23, at 2-4 (cleaned up).

The twins were adjudicated dependent on October 7, 2020. Father and Mother were ordered to continue with drug and alcohol treatment, comply with drug screens, attend supervised visits, and obtain stable housing. Meanwhile, in September 2020, the children were relocated to the pre-adoptive home of

T.S. and P.S. ("Foster Parents"), where they remained at the time of the termination hearings.

On October 18, 2022, CYF filed petitions to terminate Father's parental rights as to both children pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b). The court held a hearing on the petitions on March 10, 2023, and June 2, 2023.[2] CYF presented testimony from two of the agency's caseworkers, as well as Terry O'Hara, Ph.D., who testified as an expert in child psychology and the individual who conducted evaluations of the children both with Father and Foster Parents.

Father called Nacia Gibbs, who began supervising his visits with the children in January 2023. Additionally, he presented three witnesses from Jade Wellness. Collectively, their testimony revealed that while Father initially began substance abuse treatment in May 2022, it was interrupted by periods of incarceration, and began anew in November 2022. Since that time, he has been consistent and compliant with his treatment, despite still using alcohol, and has been seeking housing with their assistance. Father's mother, K.A. ("Paternal Grandmother"), has participated in most of Father's visits with the children since January 2023, and she testified regarding her observations during those visits. Finally, Father testified on his own behalf regarding his progress and desire to reunify with L.D.A. and D.A.

---

[2] KidsVoice served as both legal counsel and guardian *ad litem* ("GAL") for L.D.A. and D.A. Due in part to their autism diagnoses, it was determined that no conflict existed between their legal and best interests.

As summarized by the orphans' court, the cumulative evidence presented at the hearings demonstrated that Father had "failed to address the needs identified in the court's orders and continued to struggle with sobriety, housing instability, and repeated incarceration." Orphans' Court Opinion, 8/2/23, at 6. During the period of the children's dependency, Father "was often homeless or residing with friends." *Id*. at 7 (cleaned up). Father received in-home services to assist with housing from May 2020 until March 2022, when the services closed for lack of progress. By January 2022, he had ceased any contact with CYF. It was subsequently determined that he was incarcerated from February 24 to March 11, 2022, and from June 25, 2022, to November 18, 2022. He spent some of that time in the inpatient substance abuse treatment program at the Renewal Center.

Regarding Father's drug and alcohol concerns, at the time of the adjudication he was engaged in methadone treatment at Tadiso, an opioid treatment facility, and intensive outpatient treatment at Pyramid Healthcare. However, he was discharged from Pyramid approximately one month later because of inconsistent attendance and a relapse. On multiple occasions, CYF referred Father for a drug and alcohol evaluation at yet another treatment facility, POWER, which ultimately recommended additional outpatient treatment. While he did not engage in treatment through CYF's services, Father averred that he enrolled in treatment at Jade Wellness in May 2022. CYF was unable to confirm either his participation or completion of that

program at that time. As for the random drug screens, his attendance was inconsistent, and he continued to consume alcohol.

After the termination petitions were filed in October 2022 and Father was released from incarceration in November 2022, he re-engaged in drug and alcohol treatment at Jade Wellness and consistently attended his drug screens. Father also moved into a homeless shelter, where he remained at the time of the hearing. He maintained that he had actively been seeking housing with the assistance of Jade Wellness since January 2023, but had not yet secured an apartment.

During the same, roughly two-year period from dependency to the filing of the termination petition, L.D.A. and D.A. flourished in their pre-adoptive placement with Foster Parents. Dr. O'Hara observed that Foster Parents displayed positive parenting skills commensurate with the special needs of the children. The children, in turn, displayed indicators of a secure attachment to Foster Parents. During this period, Foster Parents have provided for the safety and stability of the children, have met their needs, and are to whom the children look for reassurance and comfort. At the time of their placement at seven years old, both children were non-verbal and not toilet-trained. Since that time, they have attained sufficient speech to express themselves, successfully learned to use the toilet, and have developed basic life skills, such as eating with utensils and dressing themselves.

Contrarily, given Father's struggles with substance abuse and unstable housing, Dr. O'Hara determined that "it would be very difficult [for Father] to

be able to prioritize the needs of a child." *Id*. at 10 (quoting N.T. Hearing, 3/10/23, at 152). Furthermore, it was observed that at the time of Dr. O'Hara's evaluation in December 2022, Father had only attended one visit with the children in the preceding year. Considering the dearth of contact during that year, Father's inability to provide the requisite care for the children, and the countervailing stability provided by Foster Parents, Dr. O'Hara opined that severing Father's parental rights would have limited detrimental impact upon the children. Nonetheless, the doctor believed that if Father addressed his substance abuse, his presence in the children's lives could be a positive influence. *See* N.T., 3/10/13, at 162. Finally, the GAL argued to the court that although the children were unable to formulate a preference due to their limited speech and development, it was in their legal and best interest to terminate Father's parental rights so that they could be adopted into a safe, permanent home. *See* N.T. 6/2/23, at 145.

Based on the foregoing, the orphans' court found that CYF had met its burden of establishing statutory grounds for termination under §§ 2511(a)(8) and (b), as to both L.D.A. and D.A., and therefore granted CYF's petitions to terminate. Father timely appealed and this Court consolidated the matters *sua sponte*. Father and the orphans' court have complied with Pa.R.A.P. 1925. Father presents the following issues for our consideration:

> I.  Whether the [orphans'] court abused its discretion by erring as a matter of law and/or making a decision that was manifestly unreasonable in granting the petition to involuntary[il]y terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(8).

- 6 -

II.   Whether the [orphans'] court abused its discretion by erring as a matter of law and/or making a decision that was manifestly unreasonable in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Father's parental rights would best serve the needs and welfare of the child pursuant to 23 Pa.C.S. § 2511(b).

III.   Whether CYF's failure to meet its burden under 23 Pa.C.S. § 2511(a)(8) rendered the trial court's finding pursuant to 23 Pa.C.S. § 2511(b) an abuse of discretion and/or error as a matter of law.

Father's brief at 4 (cleaned up).

In sum, Father assails the conclusion of the orphans' court that CYF sustained its burden as to § 2511(a)(8) and (b).  We consider such a claim mindful of the following legal principles.

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence.  This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but it does not require the appellate court to accept the lower court's inferences or conclusions of law.  That is, if the factual findings are supported, we must determine whether the trial court made an error of law or abused its discretion.  An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will.  Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.  However, we must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re Adoption of C.M.*, 255 A.3d 343, 358–59 (Pa. 2021) (cleaned up). It is the trial court's role to assess credibility and resolve any conflicts in the evidence, and in doing so it "is free to believe all, part, or none of the evidence presented[.]" *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). Thus, "if competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under [§] 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear

conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (cleaned up).

As noted, Father asserts that CYF failed to establish by clear and convincing evidence the statutory grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(8) and (b).  These subsections provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

To prove § 2511(a)(8), the moving party must establish three elements: "(1) that the child has been removed from the care of the parent for at least twelve months; (2) that the conditions which led to the removal or placement

- 9 -

of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child." **Int. of M.E.**, 283 A.3d 820, 832 (Pa.Super. 2022) (citation omitted).  This subsection is unique in that it "does not require the court to evaluate a parent's willingness or ability to remedy the conditions that led to the placement of the children."  **Id**. (citation omitted).  Instead, "the relevant inquiry regarding the second prong of § 2511(a)(8) is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing."  **Id**. (cleaned up).

Critically, § 2511(b) prohibits the orphans' court from considering, as part of its § 2511(a)(8) analysis, those efforts first initiated by a parent after being notified of the filing of a termination petition.  **Id**.; 23 Pa.C.S. § 2511(b).  While this Court has recognized that rule may appear harsh because it does not permit the court to consider a parent's recent progress,

> by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities.  The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future.  Indeed, we work under statutory and case law that contemplates only a short period of time, to wit eighteen months, in which to complete the process of either reunification or adoption for a child who has been placed in foster care.

**Int. of M.E.**, **supra** at 832 (cleaned up).  Finally, although § 2511(a) focuses generally on the parent's behavior, the third element of § 2511(a)(8) centers

on the child's needs, thereby encompassing the needs and welfare analysis typically reserved until the court's analysis of § 2511(b).

Father concedes that sufficient time elapsed pursuant to § 2511(a)(8), but nonetheless contests that the conditions leading to removal continued to exist. *See* Father's brief at 11. He points to his evidence that he had begun treatment at Jade Wellness in mid-2022, and that he had made significant progress on his treatment goals. *Id*. at 12-13. Father highlights his testimony that he was gainfully employed and actively seeking housing. *Id*. at 16. Finally, he maintains that his efforts at compliance were not first initiated after the filing of the termination petitions. *Id*. at 17.

Upon review, we agree with the orphans' court's assessment that CYF had satisfied its burden of establishing statutory support for termination under § 2511(a)(8). Specifically, the court found that the first element was satisfied because twenty-five months had elapsed from the time of removal to the filing of the termination petitions. *See* Orphans' Court Opinion, 8/2/23, at 13-14. The court observed that throughout the children's dependency, Father's compliance and progress at permanency review hearings had, at best, been minimal. *Id*. at 14. Regarding Father's recent, more significant progress, the court determined that it began after the filing of the termination petitions:

> Though Father participated sporadically in various drug and alcohol treatment programs over the life of the case, he did not successfully comply with a program until after his release from incarceration and his reengagement with Jade Wellness in November 2022. While Father recently has attended treatment, has a good prognosis, and has had clean drug screens, none of

this progress occurred until after CYF filed the termination petition[s]. At no time prior to the filing of the petition[s] was Father able to demonstrate a significant period of sobriety or that he had located stable housing. Indeed, even at the time of the termination hearing Father resided in a homeless shelter with no ability to accommodate [the] children.

*Id*. at 15 (cleaned up). Therefore, we discern no abuse of discretion on the part of the orphans' court in finding that the conditions leading to placement continued to exist.

Similarly, we conclude that the orphans' court did not abuse its discretion in determining that termination best served the needs and welfare of L.D.A. and D.A. pursuant to § 2511(a)(8). The children have been in foster care for approximately three years. At the time of the hearing, Father was unable to care for the children, such that reunification was not imminently feasible. As we will explain in more detail in our analysis of § 2511(b), the orphans' court was within its discretion to prioritize the needs of L.D.A. and D.A. for stability, structure, and permanence over continuing their relationship with Father. Therefore, we hold that the orphan's court did not abuse its discretion in finding statutory support for termination of Father's parental rights as to L.D.A. and D.A. pursuant to § 2511(a)(8).

Turning to § 2511(b), we again set forth the guiding principles.

[C]ourts should consider the matter from the child's perspective, placing her developmental, physical, and emotional needs and welfare above concerns for the parent.

Accordingly, the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis. We have observed the law

- 12 -

regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved. Thus, the court must determine each child's specific needs.

Moreover, the child's emotional needs and welfare include intangibles such as love, comfort, security, and stability. As further guidance, we have identified factors, *i.e.*, specific needs and aspects of the child's welfare, that trial courts must always consider. The court must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents. And, if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which is not always an easy task.

*Int. of K.T.*, 296 A.3d 1085, 1105–06 (Pa. 2023) (cleaned up).

This Court has emphasized that "the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010) (cleaned up). In weighing the bond considerations pursuant to § 2511(b), "courts must keep the ticking clock of childhood ever in mind." *In re T.S.M.*, 71 A.3d 251, 269 (Pa. 2013). "Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*. A court cannot "toll the well-being and permanency" of a child indefinitely in the hope that a parent "will summon the ability to handle the responsibilities of parenting." *In re C.L.G.*, 956 A.2d 999, 1007 (Pa.Super. 2008) (*en banc*) (citation omitted).

Father argues that the evidence established he had a bond with the children that the court deemed beneficial, and there was insufficient evidence

of the effect that termination would have on the children. *See* Father's brief at 18-19, 28. We agree with Father that the court determined there to be a bond between the children and Father. However, the evidence also clearly established that Father was not, and would not soon be, in a position to care for the children at the time of the termination hearings. Despite the bond Father established since re-engaging in visits in December 2022, the court determined that it was in the best interests of L.D.A. and D.A. to terminate Father's parental rights. In essence, Father is asking us to reweigh the factors in such a way as to prioritize his bond with the children over the other factors that the orphans' court deemed more important. This we cannot do.

> It is up to the orphans' court to consider the totality of the circumstances when performing a needs and welfare analysis. Nothing in our case law dictates that the bond between a child and parent must predominate over all other needs and welfare considerations. Instead, after ascertaining the nature and status of the bond and effect on the child of severing it, the orphans' court must weigh any pain from breaking the bond against other considerations as to what result serves the child's needs and welfare.

*Int. of M.E.*, *supra* at 839 (cleaned up). We have held that it is "within the discretion of the orphans' court to prioritize the safety and security" of children "over their bonds with their parents," and that this Court will not disturb such an assessment when the court's "factual findings are supported by the record." *Id*. (cleaned up).

Here, the orphans' court determined that termination best served the needs and welfare of L.D.A. and D.A. because the bonds between the children

and Father were not necessary, they would "not suffer extreme emotional consequences from termination of Father's parental rights[,]" and termination would instead provide them with much needed stability and permanency. Orphans' Court Opinion, 8/2/23, at 17-18. The court summarized its findings as follows:

> [The] children have been in Foster Parents' care for almost three years. During that time, Father's presence in [the] children's lives has been inconsistent. The evidence presented at the hearing persuaded the court that, despite his absence, Father and children do share a bond. However, [the] children's ability to thrive and progress in Foster Parents' care without Father's consistent presence demonstrates that this bond, though potentially beneficial, is not necessary.
>
> Given the length of time [the] children have been in care, their extensive needs, Father's lack of progress toward his goals, and failure to remain a consistent presence in [the] children's lives, the court justifiably concluded that the children's need for safety, permanency, and stability outweighs the possible benefit to them of maintaining their relationship with Father and, further, that termination of his parental rights served the children's needs and welfare.

*Id*. at 20 (cleaned up).

Since the court determined that termination was proper because Father would not imminently be able to resume parental duties of the children, it changed the children's goal from reunification to adoption. In doing so, the court nonetheless recognized that Father's visits were beneficial to the children and urged the parties to engage in mediation so that Father could continue the visits following adoption by Foster Parents. *See* N.T., 6/2/23, at 153-55. In other words, the court determined that although the visits were

- 15 -

beneficial to children and should continue, if possible, termination was nonetheless in their **best interests**.

Upon review, the certified record supports the orphans' court's conclusions. During the first year of placement, Father went through cycles of complying with visitation but then losing contact with CYF for varying periods of time before re-engaging again. During the second year of placement, Father did not have any visits with the children, in part due to his incarceration. It was not until after he was released, and after the termination petitions were filed, that his attendance at visits became consistent. The court acknowledged that some of Father's inconsistent visitation history was outside of his control, but nonetheless found that it "inevitably affected the quality of the children's relationship with him." Orphans' Court Opinion, 8/2/23, at 18 (cleaned up).

At the same time, the evidence bore out the court's determination that the children have bonded with Foster Parents, whom they refer to as mom and dad, and that Foster Parents have demonstrated the ability to attend to their considerable special needs. Dr. O'Hara testified that the children's behavior with Foster Parents indicated their feelings of security around them. Additionally, the CYF caseworker observed that Foster Parents and the foster siblings provide a positive family environment for L.D.A. and D.A., and that it was apparent that the children felt safe and protected in their care. Contrarily, Father neither demonstrated at the time of his evaluation with Dr. O'Hara nor

at the termination hearings the ability to provide the stability and structure necessary to address the children's special needs and allow them to thrive.

In sum, the facts as found by the orphans' court are supported by clear and convincing evidence and its conclusions are free from legal error. ***See In re Adoption of C.M.***, ***supra*** at 359. We find no abuse of discretion, and affirm the orders terminating Father's parental rights as to L.D.A. and D.A.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/29/2023